**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Linda Griffith Rosson, on behalf of herself and all others similarly situated,

Plaintiff,

v.

Ceridian Corporation, a Delaware corporation, and Ceridian Corporation Retirement Plan,

Defendants.

Civil No. 00-1409 (RHK/FLN)
**MEMORANDUM OPINION AND ORDER**

---

Karl L. Cambronne, Chestnut & Cambronne, P.A., Minneapolis, Minnesota, and Arthur T. Susman and Robert E. Williams, Susman & Watkins, Chicago, Illinois, for Plaintiff.

R. Scott Davies, Briggs and Morgan, P.A., Minneapolis, Minnesota, for Defendants.

---

**Introduction**

Plaintiff Linda Rosson is a former employee of Defendant Ceridian Corporation ("Ceridian") who left her employment with Ceridian after January 1, 1992, and had put in less than five years of continuous service at the time she left. Rosson brought this action pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"), on behalf of herself and all others similarly situated, alleging that Ceridian and the Ceridian Corporation Retirement Plan ("the Retirement Plan") improperly calculated the retirement benefits owed them under the Retirement Plan.



FILED AUG 10 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

A few days after this action was commenced, the Defendants submitted a Voluntary Compliance Resolution with the Internal Revenue Service that would approve additional payments to Rosson and those similarly situated so that they received the correct benefits owed them under the Retirement Plan. The IRS approved the Voluntary Compliance Resolution in September 2000 and, pursuant to that resolution, Defendants paid out approximately $1.8 million to Rosson and other non-vested former employees.

Before the Court is the Plaintiff's Petition for an Award of Attorney's Fees and Reimbursement of Expenses. Plaintiff specifically asks for an award of $450,000 in attorney's fees and $11,862.06 in expenses to be paid by Defendants.[1] Defendants have opposed the award of attorney's fees to Plaintiff. For the reasons set forth below, the Court will deny the Petition.

## Background

### I. Prior Litigation Involving the Plan

This is not the first case in which Defendants have been sued over their payment of retirement benefits. In a class action captioned Kiefer v. Ceridian Corp., Civil No. 3-95-818, plaintiffs alleged that the Defendants made various errors in calculating lump sum benefits to a number of former employees. A class was certified by a Stipulation and Order on November 17, 1995. On December 21, 1995 and January 25, 1995, the

---

[1] Plaintiff proposes the $450,000 as representing either 25% of the funds paid out to Rosson and those similarly situated or a lodestar figure based upon the hours worked and rates billed by counsel in this case.

Defendants produced a list of approximately 12,000 former employees who had received lump-sum retirement benefits from the Retirement Plan or one of three additional plans that were related to and jointly administered with the Retirement Plan and used the same formula for computing lump-sum retirement benefits. The list included only those employees whose retirement benefits had vested, and did not include non-vested employees.[2]

After two years of litigation, the parties reached a settlement and filed a Settlement Agreement with the Court on August 14, 1997. Pending final approval of the Settlement Agreement, class counsel contacted Defendants to determine why certain former employees of Ceridian were not on the class list. The Defendants responded by letter dated September 5, 1997, providing reasons why each identified former employee was not on the list. In that letter, Defendants stated that five of the individuals inquired about had not been included because they were not vested participants in the Retirement Plan. (Id.) On October 24, 1997, the Court approved the Settlement Agreement entered into by the Plaintiffs and the Defendants, and entered a Final Judgment of Dismissal of Class Action.

In the course of administering the Kiefer settlement, class counsel were contacted

---

[2] Vested participants were employees who had more than five years of service and employees who had less than five years of service but were required by the Internal Revenue Code, 26 U.S.C. § 411(d)(3), to be treated as if their benefits had vested because the plan had partially terminated due to business divestitures. See May 18, 2000 Mem. Op. & Order, Kiefer v. Ceridian Corp., Civil No. 3-95-818, at 3 n.2.

by former employees who had not received notice of the settlement, but who had received a lump-sum distribution upon termination of their employment with the Defendants. Among those persons was Linda Rosson. At the time Rosson left her employment at Ceridian, she had less than five years of continuous service. After Rosson departed, Defendants had paid to her, in a lump sum, the contributions she had made to the Ceridian Plan, plus interest. The Kiefer class counsel inquired as to why these individuals had not received notice of the settlement. Defendants continued to maintain that employees with less than five years of service (i.e. employees whose retirement benefits had not vested) were not part of the Kiefer class.

On January 27, 2000, class counsel brought a motion in Kiefer seeking an order that either would declare the Court's Final Judgment and Dismissal void as to certain "undisclosed" class members or would reform the Settlement Agreement and Final Judgment to include the "undisclosed" class members and direct the Defendants to pay additional money to compensate them. The parties agreed that the "undisclosed" participants who were the subject of class counsel's motion were all former employees whose benefits had not vested at the time their employment ended -- people similarly situated to Rosson.

The undersigned heard class counsel's motion on April 19, 2000. At the hearing, Defendants informed the Court and class counsel that they were preparing to file a Voluntary Compliance Resolution ("VCR") with the Internal Revenue Service ("IRS")

that would allow the IRS to approve compensation to Rosson and other non-vested former employees.

By an Order dated May 18, 2000, the Court denied class counsel's motion, finding that the "undisclosed" participants were not members of the class certified in Kiefer and, therefore, were not bound by the Settlement Agreement and Judgment entered in the Kiefer case. Likewise, because the undisclosed, non-vested participants were not so bound, the Court determined that there was no need for the Court to void or reform the Settlement Agreement and Judgment.

## II. The Rosson Lawsuit

On June 9, 2000, Rosson – represented by the attorneys who were class counsel in Kiefer -- filed a class action lawsuit against Defendants alleging that she and all those who left Ceridian's employ after January 1, 1992, with less than five years' continuous service, had been deprived of their right under the Retirement Plan to have their retirement benefits projected to age 65 as a deferred benefit. On June 14, 2000, Defendants filed their VCR with the IRS. In their Answer, which was filed on June 30, 2000, Defendants informed Rosson that the VCR had been filed with the IRS. (Doc. No. 4.)

On July 18, 2000, Rosson's counsel served an attorneys' lien on the Defendants and their counsel. On August 3, 2000, Defendants produced a copy of their VCR to Plaintiff's counsel in connection with their initial Rule 26(a) disclosures. Rosson asserts

that she repeatedly sought discovery of the spreadsheet Defendants had provided to the IRS (which would identify the putative class members, the amounts Defendants proposed to pay each individual, and the method Defendants used to arrive at that amount), but Defendants would not produce it.

On August 21, 2000, Defendants filed a motion to stay the proceedings pending a decision from the IRS regarding the VCR. (Doc. No. 7.) The next day, Rosson filed a letter regarding the service on Defendants of motions for class certification and for judgment on the pleadings. (Doc. No. 11.) On August 31, 2000, Rosson's counsel also sent a letter to the IRS explaining the existence of this action and expressing concern about the methodology Defendants had used to calculate the amounts they proposed to pay Rosson and those similarly situated to her.

By an Order dated September 13, 2000, Chief Magistrate Judge Franklin Noel denied Defendants' motion for a stay of the proceedings, but concluded that discovery would be stayed pending a ruling on Rosson's motions for class certification and judgment on the pleadings. (Doc. No. 15.) That same day, Rosson filed her motions for class certification and judgment on the pleadings and supporting memoranda. (Doc. Nos. 16-19.) Six days later, on September 19, 2000, Defendants filed a motion to dismiss. (Doc. No. 23.)

On October 13, 2000, Defendants filed a memorandum in support of their motion

to dismiss in which they disclosed that the IRS had approved their VCR in September.[3] (Doc. No. 27.) The Defendants also submitted, in connection with their motion to dismiss, (a) the spreadsheet the Defendants had filed with the IRS in connection with the VCR, and (b) an affidavit disclosing that Defendants had begun, in August 2000, to make payments to Rosson and others similarly situated to her, and that those payments would be completed by the first quarter of 2001. (See Doc. Nos. 28 & 29.)

By November 13, 2000, Rosson's motions for class certification and judgment on the pleadings, and the Defendants' motion to dismiss, were fully briefed; however, counsel agreed to continue the hearing on those motions in order to explore the status of Defendants' actions under the VCR. On January 5, 2001, Plaintiff's counsel interviewed representatives of Defendants to confirm the method Defendants used to calculate the distributions on the spread sheet and the method used for locating class members. Following the interview, plaintiff agreed to a stipulation providing for dismissal of the Complaint.

On January 11, 2001, the Court signed a Stipulation and Order dismissing Rosson's Complaint with prejudice for lack of jurisdiction on the grounds that the

---

[3] Sometime in September 2000, Defendants sent a letter to Rosson telling her that she would be receiving a check under the VCR as payment for the Defendants' miscalculation of her lump sum retirement benefit. On October 5, 2000, Rosson's counsel brought a motion for an order barring settlement communications by the Defendants directly to the plaintiff and the putative class members. Plaintiff's counsel withdrew the motion on October 20, 2000.

Complaint was moot. (Doc. No. 36.) Two weeks later, Plaintiff filed a notice of her intent to claim an award of attorney's fees and expenses. (Doc. No. 38.) Plaintiff's fee and expense petition followed.

**Analysis**

Plaintiff advances two separate justifications for shifting the expense of her attorney's fees to the Defendants: (1) she is the "prevailing party," her lawsuit having been the "catalyst" that caused the Defendants voluntarily to take corrective actions; and (2) her counsel's efforts created a "common fund" that benefitted a class of plaintiffs and, accordingly, equity requires counsel to be compensated from the fund. Before addressing either of these arguments, the Court begins with the general rule regarding attorney's fee awards.

Ordinarily, absent a statute or enforceable contract to the contrary, parties must bear their own attorney's fees. See Buckhannon Board & Care Home, Inc. v. West Va. Dep't of Health & Hum. Resources, 121 S. Ct. 1835, 1839 (2001); Alyeska Pipeline Serv. Co. v. Wilderness Soc., 421 U.S. 240, 257 (1975). The United States Supreme Court recognizes certain limited judicially-created exceptions to this general rule. First, district courts have a "historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his fees from the fund or property itself or directly from the other parties enjoying the benefits." Alyeska Pipeline Serv. Co., 421 U.S. at 257. Second, in keeping with the

court's inherent power to sanction attorney misconduct, a court may assess attorney's fees for the "willful disobedience of a court order," as part of the fine levied on the party, or when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. at 258-59 (internal citations and quotation marks omitted).

In the present case, Rosson does not claim to have a contractual right to recover attorney's fees from Defendant. The federal statute under which she brought suit, however, allows for the recovery of attorney's fees. Section 1132(g)(1) of Title 29, United States Code, provides that "in any action under [29 U.S.C. §§ 1001-1191c, with the exception of 29 U.S.C. § 1145] . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Eighth Circuit has stated that an award of fees under this provision is discretionary with the district court, not mandatory. See, e.g., Lutheran Med. Ctr. of Omaha v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan, 25 F.3d 616, 623 (8th Cir. 1994); Lawrence v. Westerhaus, 749 F.2d 494, 495 (8th Cir. 1984) (per curiam).

"There is a presumption that an ERISA plan beneficiary who succeeds in recovering plan benefits should recover attorney's fees." Walke v. Group Long Term Disability Ins., ___ F.3d ___, 2001 WL 682731 at * 5 (8th Cir. June 19, 2001). "The unsuccessful party has the burden of proving 'special circumstances' necessary to overcome the presumption in favor of an attorney fees award." Lutheran Med. Ctr., 25

F.3d at 624. The ERISA cases in which the Eighth Circuit has applied the presumption, however, have typically involved the award of fees to a beneficiary who successfully obtaining a judgment that awarded benefits.[4] Here, Rosson argues that she was a "prevailing party" because her actions served as a "catalyst" to get the Defendants to correct their error; Rosson further contends that Defendants cannot come forward with any "special circumstances" that would effectively rebut a presumption that she is entitled to fees. (Pl.'s Reply Mem. at 19.) In light of the Supreme Court's recent holding in Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources, 121 S. Ct. 1835 (2001),[5] however, the Court concludes that Plaintiff is not entitled to a presumption in favor of an award of attorney's fees.

In Buckhannon, the Supreme Court considered whether the term "prevailing party"

---

[4] See e.g., Walke v. Group Long Term Disability Ins., ___ F.3d ___, 2001 WL 682731 at * 4 (8th Cir. June 19, 2001) (determining that under de novo review of administrator's decision, administrator lacked valid basis for terminating plaintiff's benefits); Lutheran Med. Ctr. of Omaha v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan, 25 F.3d 616, 622 (8th Cir. 1994) (affirming district court's determination that denial of coverage was arbitrary and capricious); Gunderson v. W.R. Grace & Co. Long-Term Disability Income Plan, 874 F.2d 496, 500 (8th Cir. 1989) (affirming district court's determination that plan's decision to terminate plaintiff's disability benefits was not supported by substantial evidence); Landro v. Glendenning Motorways, Inc., 625 F.2d 1344, 1356 (8th Cir. 1980) (affirming district court determination that pension plans were intended to give employees credit for years they worked for a prior employer and employees were entitled to retroactive benefit payments).

[5] With commendable candor, this decision was brought to the Court's attention by Plaintiff's counsel.

-- used in several federal statutes that shift the cost of a successful party's attorney's fees to the losing party -- "includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." Buckhannon Board & Care Home, Inc., 121 S. Ct. at 1838. Petitioners in Buckhannon argued they were entitled to attorney's fees because their lawsuit was a "catalyst" of the defendant's voluntary change in conduct." Id. That is the same theory advanced by Rosson here; she argues that although her Complaint was dismissed as moot, her persistence forced Defendants to file the VCR with the IRS and pay out money to her and those similarly situated. See Pl.'s Pet. for Award of Atty's Fees at 6-7; Pl.'s Reply Mem. at 11-16.

The Supreme Court, noting that the term "prevailing party" is a legal term of art, looked first to Black's Legal Dictionary, which defines a "prevailing party" as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded." Buckhannon Board & Care Home, 121 S. Ct. at 1839. After reviewing its prior cases involving statutory awards of attorney's fees, the Supreme Court concluded that "a 'prevailing party' is one who has been awarded some relief by the court," either through an enforceable judgment on the merits or a court-ordered consent decree. Id. at 1840. By contrast, "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change" to warrant a determination that the plaintiff a "prevailing

party." Id. The Supreme Court in Buckhannon held that one cannot be establish that he is a "prevailing party" under a "catalyst theory," thereby overruling the Eighth Circuit cases on which Rosson relies in her petition. The Court concludes that Plaintiff's "catalyst theory" argument is no longer viable.

ERISA's attorney's fee provision -- unlike the attorney's fee provision from the Fair Housing Amendments Act of 1988 that was before the Supreme Court in Buckhannon – does not state that attorney's fees are to be awarded to the "prevailing party." Rather, 29 U.S.C. § 1132(g)(1) merely states that the court may allow a reasonable attorney's fee and costs of action "to either party." Leaving aside the presumption favoring an award of fees to a "successful beneficiary," discussed above, the Eighth Circuit has directed the district courts to consider the following factors in determining whether an award of attorney's fees under § 1132(g)(1) is appropriate:

(1) the degree of culpability of bad faith which can be assigned to the opposing party;

(2) the opposing party's ability to pay;

(3) the potential deterrent effect that an award of attorney's fees would have on others;

(4) whether the moving party sought to benefit all plan participants or beneficiaries or to resolve a significant legal question regarding ERISA; and

(5) the relative merits of the parties' positions.

See Maune v. International Bhd. of Elec. Workers, Local # 1, Health & Welfare Fund, 89

F.3d 959, 963 (8th Cir. 1996); Lutheran Med. Ctr., 25 F.3d at 623; Lawrence, 749 F.2d at 496. Rosson did not address these factors in her initial fee petition, but did in her reply memorandum. (See Pl.'s Reply Mem. at 20-22.)

Having reviewed each of the five factors in light of the history of this case, the Court declines to award attorney's fees to Plaintiff. First, the Court has carefully reviewed the record and finds that it does not support a determination that Defendants here acted in "bad faith." Rosson argues that the Defendants were aware since September of 1997 that non-vested employees like her had not received notice of the class settlement and had received lump-sum retirement benefits that had allegedly been incorrectly calculated. Rosson further argues that the Kiefer class's actuary was attempting to obtain information from Defendants about non-vested participants for approximately two years, yet one fact is clear: the existence of the non-vested participants was not brought to the Court's attention by class counsel until January of 2000. In the meantime, between October of 1997 and January of 2000, class counsel presented to the Court, and the Court approved, over twenty Orders for Distribution in connection with the Kiefer settlement.[6]

There is no evidence from which the Court can reasonably infer that Defendants prepared the VCR in the five days that elapsed between the filing of Plaintiff's Complaint and Defendants' submission of the VCR to the IRS. It appears more reasonable to infer

---

[6] In connection with the Kiefer settlement, class counsel received an award of attorney's fees totaling 22.5% of the settlement fund, or approximately $12 million.

that the VCR was being prepared at the time Plaintiff filed suit. In fact, counsel for the Defendants represented to the Court and Rosson's counsel at the April 19, 2000 hearing in Kiefer that a VCR was going to be filed with the IRS. Nor does the Court conclude that, by seeking to stay this action pending approval of the VCR by the IRS, Defendants were attempting to get away with paying Rosson and the other non-vested former employees something less than what they were entitled to under the Plan. Indeed, it appears that, upon reviewing the spreadsheet used in connection with the Defendants' administrative filing with the IRS, plaintiff's actuary was able to confirm that the methodology being employed by the Defendants was accurate. (Pl.'s Reply Br. at 9-10.)

Second, while it is undoubtedly true that Defendants can afford to pay an award of attorney's fees, "this factor alone does not justify an award where the other factors dictate against one." Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1181 (8th Cir. 2001) (citing Continental Assur. Co. v. Cedar Rapids Pediatric Clinic, 957 F.2d 588, 595 (8th Cir. 1992)). Third, on the question of deterrence, the Court notes that these Defendants already had resolved the vast majority of the issues involving its calculations of retirement benefits; this lawsuit is the remnant of a larger dispute. Fourth, from the procedural posture of the case, it is clear that Rosson was not seeking to benefit all participants or beneficiaries of an ERISA plan, but rather only a subclass of non-vested participants. Nor did her litigation seek to resolve a significant legal question regarding ERISA itself. Finally, the Court finds there to have been merit in each of the party's

positions during this proceeding. Having considered these factors, the Court concludes that it will not exercise its discretion to award attorney's fees to Plaintiff.

Finally, Plaintiff seeks to impose the cost of her attorney's fees on the Defendants on the theory that (1) the Court has an inherent equitable power to direct that Plaintiff's attorney's fees be paid out of a "common fund" created by Defendants for the benefit of more than just the Plaintiff, and (2) the Defendants here disbursed the "common fund" to the individual class members after an attorney's lien had been filed against the fund by Plaintiff's counsel. This argument raises a question concerning the relationship between the judicially-created "common fund" exception to "the American Rule," on the one hand, and Congress's express grant of discretionary authority under ERISA to award attorney's fees, on the other hand. Whether attorney's fees are awarded based on a statute or based on the "common fund" doctrine matters for two reasons. First, the basis for the fee award determines who bears the fees: under a "common fund" theory, a plaintiff class as a whole bears the burden of attorney's fees, whereas a statutory award is paid by the defendant. Second, the type of fee determines how the fee award is calculated: the "lodestar" method is applied to determine a reasonable attorney's fee in a statutory award, whereas it is not necessarily applied under a "common fund" doctrine. See Brytus v. Spang & Co., 203 F.3d 238, 242 (3d Cir. 2000).

Although the Eighth Circuit has not addressed the appropriateness of a "common fund" award of fees where a statute expressly authorizes fee-shifting, other courts have.

Several courts have observed that a settlement in a case subject to a fee-shifting statute has the effect of converting a statutory fee case into one in which plaintiffs' attorney must seek compensation from the common fund created by the settlement agreement. See, e.g., Bowen v. SouthTrust Bank of Alabama, 760 F. Supp. 889, 893 (M.D. Ala. 1991) (citing County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1327 (2d. Cir. 1990); Skelton v. General Motors Corp., 860 F.2d 250, 254-55 (7th Cir. 1988), cert. denied, 493 U.S. 810 (1989); Parker v. Anderson, 667 F.2d 1204, 1213-14 (5th Cir.), cert. denied, 459 U.S. 828 (1982)). Furthermore, courts have acknowledged that statutory fee-shifting provisions generally are not intended to circumscribe the operation of the "common fund" doctrine. See Long Island Lighting Co., 907 F.2d at 1327 (involving fee-shifting provision of RICO); Eaves v. Penn, 587 F.2d 453, 465 (10th Cir. 1978) (ERISA).

Courts recognize an exception to this general rule, however, where "under a particular combination of facts, the operation of the [common] fund doctrine conflicts with an intended purpose of a relevant fee-shifting statute." Long Island Lighting Co., 907 F.2d at 1327. Congress's purpose, by including a provision in ERISA authorizing the award of attorney's fees, was to have "the offending party bear the costs of the award, rather than non-culpable, non-party plan participants." Eaves, 587 F.2d at 464. The policy underlying § 1132(g)(1) is to provide both prospective plaintiffs and their attorneys an economic incentive to bring meritorious ERISA cases. See Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1265-66 (5th Cir.1980).

The circumstances of this case are unique. There was neither a settlement, nor the certification of a class by the Court, nor the entry of a judgment or other Court order altering the relationship of the parties, nor a finding of bad faith on the part of the Defendants. Rosson's commencement of this action and the Defendants' submission of a VCR to the IRS (which Rosson acknowledges to have been accurate) occurred within days of each other, and Rosson's Complaint was ultimately dismissed as moot. Based on the foregoing, the Court determines that an award of fees under the "common fund" theory, which would ultimately shift those fees to the Defendants, would be inconsistent, in this case, with the purpose of ERISA's attorney's fee provision. The Court has already determined that Rosson is not entitled to an award of attorney's fees under ERISA's fee award provision. Accordingly, the Court will not grant the petition under a "common fund" theory.

**Conclusion**

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that Plaintiff's Petition for an Award of Attorney's Fees and Reimbursement of Expenses (Doc. No. 40) is **DENIED**.

Dated: August 10, 2001

RICHARD H. KYLE
United States District Judge

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500